Ellen Relkin (N.J. Attorney Bar #006691985)
**WEITZ & LUXENBERG, P.C.**
A NEW YORK PROFESSIONAL CORPORATION
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
Telephone: (212) 558-5785
E-Mail: erelkin@weitzlux.com

Kevin E. Barber (NJ Attorney Bar #021921996)
**NIEDWESKE BARBER HAGER, LLC**
98 Washington Street
Morristown, New Jersey 07960
Phone:  (973) 401-0064
Email: kbarber@n-blaw.com

Nancy Erika Smith, Esq. (NJ Attorney Bar #027231980)
Neil Mullin, Esq. (NJ Attorney Bar #011891980)
**SMITH MULLIN, P.C.**
240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607
Email: nsmith@smithmullin.com
Email: nmullin@smithmullin.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEX PEREA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUCO LIFE INSURANCE COMPANY of NEW JERSEY, and PRUCO LIFE INSURANCE COMPANY,<br><br>        Defendants. | Civil Action No. 16-<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.        Plaintiff and the proposed class of individuals similarly situated are victims of
financial fraud orchestrated by the Prudential Defendants through the "sale" of allegedly low-
cost life insurance policies.  Beginning in or about 2014 to present Prudential and Wells Fargo
had an agreement to sell low-cost life insurance policies to Wells Fargo customers.  In practice,
the "sale" of such life insurance policies was completed without the consent of Wells Fargo
customers and/or by deceiving Wells Fargo customers about the nature of the policies. Prudential
opened these life insurance policies, called MyTerm policies, on behalf of Wells Fargo
customers without their knowledge or consent.  Prudential then auto-debited monthly premiums
from customer accounts.  When Wells Fargo customers contacted Prudential to inquire about the
MyTerm premium charges, Prudential misled and/or stonewalled the customers.  Plaintiff Alex
Perea brings this action under federal and state law on behalf of himself and on behalf of all
persons similarly situated who were fraudulently enrolled in the MyTerm life insurance program
devised by Prudential to prey upon Wells Fargo customers.

## PARTIES

2.        Plaintiff and proposed Nationwide Class Representative, Alex Perea is a resident
of Arizona.  Mr. Perea held a Wells Fargo bank account beginning in 2010 and continuing
through present.  On or around October 2016 Mr. Perea received a past due/report to collections
letter from Prudential for "MyTerm" life insurance.  At no time did Mr. Perea approve, sign up
for or enter an agreement for a MyTerm life insurance policy through Prudential.

3. Defendant The Prudential Insurance Company of America is a citizen of the States of California and New Jersey because it is a domestic corporation incorporated in the State of California and has its principal place of business located at 751 Broad Street, 21st Floor, City of Newark, County of Essex, State of New Jersey. The Prudential Insurance Company of America is affiliated with and related to all other named Defendants

4. Defendant Pruco Life Insurance Company of New Jersey is a citizen of the State of New Jersey because it is a domestic for-profit corporation incorporated in the State of New Jersey and has its principal place of business located at 213 Washington Street, City of Newark, County of Essex, State of New Jersey. Pruco Life Insurance Company of New Jersey issues MyTerm life insurance in both New York and New Jersey.

5. Defendant Pruco Life Insurance Company is a citizen of the States of Arizona and New Jersey because it is a domestic for-profit corporation incorporated in the State of Arizona and has its principal place of business located at 213 Washington Street, City of Newark, County of Essex, State of New Jersey. Pruco Life Insurance Company issues MyTerm policies nationally, except in New York and New Jersey.

6. Defendants The Prudential Insurance Company of America, Pruco Life Insurance Company of New Jersey, and Pruco Life Insurance Company are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

7. The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and with respect to certain claims, 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over the Defendants because Defendants are residents of and conduct business in this District.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants reside in and conduct business in this District.

## FACTUAL BACKGROUND

### A.    Prudential's "MyTerm" Life Insurance Program

11.    In or about June 2014, Defendants The Prudential Insurance Company of America ("Prudential"), Pruco Life Insurance Company of New Jersey ("Pruco New Jersey"), and Pruco Life Insurance Company ("Pruco"), through co-conspirator Wells Fargo Bank, began to sell "MyTerm" life insurance policies ("MyTerm Policies") which were tailored to unsophisticated, low income customers who had difficulties obtaining policies through conventional means.

12.    The MyTerm Policies had relatively low premiums and did not require medical background checks.

13.    The MyTerm Policies were linked to Wells Fargo Bank accounts by design, in order to enroll customers in auto payment of MyTerm policy premiums.

14.    Defendants authorized Wells Fargo employees to engage in contracts with new MyTerm customers and set up an incentive program for Wells Fargo employees that included a "kick back" to Wells Fargo agents on a graduated scale based on the volume of MyTerm customers signed up for Prudential life insurance.

15.    The kick-back incentive program permitted and encouraged wide-scale cheating whereby Wells Fargo employees established and 'sold' MyTerm policies to Wells Fargo banking customers without their consent.

16.     In fact, Wells Fargo employees assigned MyTerm policies to customers without discussing those policies and without obtaining customers' consent.  In other instances, Wells Fargo employees deceived customers about the nature of the MyTerm policies to trick them into agreeing to a policy.  Because the policy premiums were automatically deducted from the financial accounts of the existing Wells Fargo customers, many, if not most customers were unaware they were enrolled in the MyTerm policies.

17.     Upon information and belief, Wells Fargo took these actions in concert with Defendants, who orchestrated the sale of the MyTerm policies through its co-conspirator in this scheme, Wells Fargo.

**B.     January 2015: Defendant Prudential's Surveys of MyTerm Policy Purchasers**

18.     By January 2015, Defendant Prudential learned that the MyTerm Policies sold through Wells Fargo Bank had a high lapse rate, a strong indication of underlying deceptive practices and fraud perpetrated on policyholders.

19.     As a result, Defendant Prudential sent a survey to MyTerm policyholders to determine the cause of the high lapse rate.

20.     Those surveyed ultimately showed that:

a.   More that seven hundred (700) emails were returned as undeliverable; and

b.   Twelve (12) clients cited as the reasons for the cancellations that they did not understand the policy or even know about the policy premiums.

21.     Defendant Prudential took no action to rectify the survey results and assuage consumer concerns.  Instead, Defendant Prudential sought to silence concerns raised by members of its internal investigation teams and engaged in a series of retaliatory firings to mute all mentions of the fraudulent conspiracy occurring with the help of Wells Fargo.

22.     In fact when three high level employees of Prudential's Corporate Investigations Division ("CID") objected to Prudential's selling of life insurance through the corrupt MyTerm program and specifically investigated the fraud committed upon the Plaintiff in this action, Alex Perea, upper management at Prudential responded by retaliating and firing the aforesaid three CID executives. In that regard, Prudential fired Julie Broderick, Vice-President, Corporate Counsel and co-head of the CID. Prudential also fired Darron Smith the Director of CID responsible for supervising and managing a team of investigators regarding Defendant Prudential's business and sales practices. And Prudential fired Thomas Schreck, the Director of CID responsible for managing investigations regarding Defendant Prudential's business and sales practices. Prudential fired these individuals on a pretext in order to silence them so that Prudential could continue and conceal its corrupt MyTerm Program.

23.     Defendants continued to "sell" (or, in practice, assign) MyTerm policies to Wells Fargo customers without their knowledge and consent until at least October 2016.

### NATURE OF THE CLAIM

24.     In or about 2010 Plaintiff Alex Perea opened a savings account with Wells Fargo in Arizona.

25.     In or about October 2016 Plaintiff Perea received at his home address a letter via US Mail from Prudential claiming that he owed money for a life insurance policy. The letter threatened to garnish Plaintiff Perea's bank account for unpaid life insurance premiums.

26.     Plaintiff Perea never applied for MyTerm Policy or any other Prudential life insurance.

27.    Plaintiff Perea never received a copy of a life insurance policy from Prudential via mail or electronic communication.

28.    Plaintiff Perea never authorized anyone to seek life insurance on his behalf.

29.    Plaintiff Perea was unaware that an unauthorized life insurance application had been submitted in his name.

30.    Plaintiff Perea never provided Prudential with his personal information, including but not limited to, his social security number, age, bank account number, home address, etc.

31.    Plaintiff Perea never received any written or email communication indicating that he had applied for, was approved for, or had purchased Prudential life insurance, including a MyTerm insurance policy.

32.    Upon receiving the threatening collections letter from Prudential, Plaintiff Perea researched "Prudential fraud" and found a contact number for Prudential Customer Service.

33.    In response to Plaintiff Perea's complaint to Prudential's Customer Service center, Prudential ignored Plaintiff Perea's complaint and refused to cancel the life insurance policy fraudulently taken out in Perea's name.

34.    Thereafter, Plaintiff Perea contacted Prudential's Compliance Department, indicating that he must be the victim of identity theft. The three Prudential employees who sought to thoroughly investigate and remedy fraud against Plaintiff Perea were terminated by Prudential in retaliation for their refusal to participate in fraud.

35.    Upon information and belief, Prudential fraudulently and without authorization, conspiring with Wells Fargo, withdrew some insurance premiums directly from Plaintiff Perea's Wells Fargo savings account.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

37.     The Classes' claims all derive directly from a conspiracy orchestrated by Prudential.  This case is about the fraudulent corporate conduct and practices of Prudential and its affiliates, at law and in equity, for their knowledge and conduct. Prudential engaged in uniform and standardized conduct toward the Classes. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern.

38.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 of the Federal Rules of Civil Procedure provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

### The Nationwide Class

39.     Plaintiff bring this action and seeks to certify and maintain it as a class action

under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on

behalf of himself and a Nationwide Class (the "Nationwide Class") defined as follows:

> All persons in the United States who were Wells Fargo banking customers and enrolled
> in MyTerm life insurance policies issued by Prudential, Pruco New Jersey or Pruco
> without their knowledge or knowing and informed consent.

40.     Excluded from the Classes are: (1) Defendants, any entity or division in which

Defendants have a controlling interest, and their legal representatives, employees, officers,

directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates of

Defendants; (2) the Judge to whom this case is assigned and the Judge's staff; (3)

governmental entities.

### Numerosity

41.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiff is

informed and believes that there are thousands of similarly situated individuals who have fallen

victim to financial fraud caused by Prudential's MyTerm life insurance program.  Individual

joinder of all  Class members is impracticable.

42.     Although the exact number of Class Members is uncertain and can only be

ascertained through appropriate discovery, the number is great enough such that joinder is

impracticable.   The disposition of the claims of these Class Members in a single action will

provide substantial benefits to all parties and to the Court.

43.     The Class is ascertainable because its members can be readily identified using

Wells Fargo bank statements, MyTerm registration, MyTerm premium statements and other

information kept by Defendants, and/or third parties in the usual course of business, and within their control.

**Typicality**

44.     Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by Prudential.  The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that he has incurred losses relating to Prudential's MyTerm scheme.   Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in damages to all Class Members. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequate Representatives**

45.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving financial schemes.

46.     Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of the Class.

**Predominance of Common Issues**

47.     There are numerous questions of law and fact that are common to the Plaintiff and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members.  These common legal and factual issues include the following:

a. Whether MyTerm caused unauthorized banking charges to Wells Fargo customers;

b. Whether Prudential knowingly accepted payment resulting from unauthorized charges to Wells Fargo Bank customers;

c. Whether Prudential knowingly obtained life insurance "clients" without knowing and informed consent of those individuals;

d. Whether Prudential's orchestration of self-serving MyTerm life insurance through Wells Fargo Bank accounts gives rise to the existence of an enterprise;

e. Whether Prudential's scheme relative to MyTerm life insurance affected trade or commerce;

f. Whether Prudential, Pruco New Jersey, and Pruco were involved as associates of the MyTerm enterprise;

g. Whether Defendants, entirely and individually, engaged in patterned, fraudulent practices that amounted to racketeering activities;

h. Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

i. Whether the Defendants violated consumer protection statutes, and if so, what remedies are available under those laws;

j. Whether Prudential was selling insurance policies through Wells Fargo Bank which was not licensed nor authorized by any state insurance regulations to sell insurance policies;

k.   Whether Plaintiff and the Class are entitled to a declaratory judgment stating that the Prudential's operation and conspiracy with Wells Fargo Bank financially defrauded consumers;

l.   Whether Defendants' unlawful, unfair, and/or deceptive practices harm Plaintiff and the Class;

m.  Whether Defendants have been unjustly enriched by their conduct;

n.   Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

o.   Whether Defendants should be declared responsible for notifying all Class members of the existence and charged premium amounts of MyTerm policies, thus establishing whether such contracts were legally consented to;

p.   What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

q.   How such penalties should be most equitably distributed among Class members.

**Superiority**

48.   Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.   The prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for Prudential, Pruco, and Pruco New Jersey; and because adjudication with respect to individual Class Members

would, as a practical matter, be dispositive of the interests of other Class Members, or impair substantially or impede their ability to protect their interests.

50.    Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

51.    Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests.  Classwide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding the consumer fraud caused by Defendants' MyTerm life insurance enrollment.

52.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common questions of law and of fact regarding

Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

53.      The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

<u>**Claims for Relief**</u>
**CLAIM I**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**
**18 U.S.C. §§ 1961–1968**

54.      Plaintiff brings this Claim for Relief on behalf of members of the Class.

55.      Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

56.      This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)–(d).

57.      The Defendants' are all "persons" under 18 U.S.C. § 1961(3).

58.      The Prudential Life Insurance Company of America, Pruco Life Insurance Company of New Jersey, Pruco Life Insurance Company and Wells Fargo comprise and comprised an association-in-fact enterprise engaged in and whose activities affect trade or commerce.

59.     The Prudential Life Insurance Company of America, Pruco Life Insurance Company of New Jersey, Pruco Life Insurance Company and Wells Fargo were and are associated in fact for the proposed purpose of establishing an online or electronic forum for life insurance policy sales, but the enterprise's apparent actual purpose is to defraud consumers by "selling" them MyTerm life insurance policies without their knowledge or informed consent.

60.     In other words, the "sale" of the MyTerm policies is fraudulent, and the transactions occur without the knowledge or consent of Wells Fargo banking customers, who then pay the policy premiums from their Wells Fargo accounts.

61.     The enterprise commenced on or around January 2014, if not sooner, when Prudential first established the electronic platform for MyTerm life insurance contracts and payments.

62.     The enterprise offered Wells Fargo Bank agents and their own agents "kick-backs" that were paid similarly in concept to commission payments. These "kick-back" payments were provided to Wells Fargo employees who enrolled a Wells Fargo customer, or assisted a Wells Fargo customer, in enrolling in a MyTerm policy. In fact, however, Prudential and Wells Fargo conspired to enroll customers whether they wanted the MyTerm product or not.

63.     Wells Fargo was at all times aware of the scheme to defraud its customers because it actively participated in the scheme and its employees received kick-back payments when they successfully enrolled new customers.

64.     The RICO enterprise described herein is an ongoing organization with an ascertainable structure, and a framework for making and carrying out decisions that functions as a continuing unit with established duties. This ongoing organization is separate and distinct from the pattern of racketeering activity in which the enterprise members have been engaged and are

engaging. The enterprise was and is used by Defendants as a tool to effectuate the pattern of racketeering activity.

65.   Further, Defendants and Wells Fargo were entities separate and distinct from each other and the enterprise. All of the enterprise constituents are independent legal entities with the authority and responsibility to act independently of the enterprise and of other enterprise members.

66.   The enterprise had a common purpose: to enroll Wells Fargo customers in MyTerm life insurance policies without their knowledge or consent. Each member of the enterprise benefited from the common purpose: Defendants sold additional MyTerm products and Wells Fargo received cash compensation when it enrolled additional customers in MyTerm policies.  Furthermore, Defendants needed Wells Faro to foist their life insurance products on unsuspecting banking customers and Wells Fargo needed Defendants because as a banking institution it is prohibited from selling life insurance.

67.   In January 2015, Prudential conducted an internal corporate audit (that included the Pruco entities) of its MyTerm program that revealed a substantial number of questionable accounts, yet, no action was taken to correct or further investigate customer complaints related to unauthorized enrollment in MyTerm life insurance policies.  Therefore, Prudential knew or should have known that its sales practices related to MyTerm accounts was leading to and would lead to large-scale consumer fraud.

68.   More specifically, the following conduct demonstrates continuous and ongoing collaboration, communication, and coordination between The Prudential Life Insurance Company of America, Pruco Life Insurance Company of New Jersey, Pruco Life Insurance Company, and Wells Fargo:

a. Based on internally ordered investigations, Defendants long-knew that the MyTerm enterprise was unlawful. A series of investigations revealed that MyTerm Policies had a seventy percent (70%) lapse rate among all policies sold in 2014; that MyTerm Policy sales numbers spiked near the end of each quarter, and; that MyTerm Policies were sold predominately to individuals with Hispanic sounding last names.

b. The Corporate Investigations Division of Prudential was and is aware that dormant bank accounts are targeted for fraud because bank statements are rarely reviewed, leaving accounts unmanaged. Yet, the MyTerm collaboration with Wells Fargo included no second check or confirmation by Prudential that the MyTerm policies contract returned by Wells Fargo were properly acquired.

c. The Corporate Investigations Division further learned that many policy holders of MyTerm Life insurance were unaware that they had purchased MyTerm policies. Some of these customers had no recollection of signing up for or consenting to any such policy, or, there was a language barrier existed between customer and agent such that informed consent could not be given.

d. Prudential and the Pruco entities provided a "kick-back" to Wells Fargo agents for the sale of MyTerm policies without requiring any check or balance to ensure that newly acquired MyTerm customers were consensually signed.

e. Despite knowing that many MyTerm policies sales were questionably obtained, Prudential and the Pruco entities continued to receive a financial benefit from the MyTerm policies through the direct wire of monies from Wells Fargo customer accounts.

f.  Prudential and the Pruco entities were well apprised of the above described issues by members of the Corporate Investigations Division and other employees, yet no action was taken to correct the practices related to acquiring new customers and/or resolve the issues identified by Prudential employees and the Corporate Investigations Division.

69.     Prudential and the Pruco entities were directly engaged in the consumer fraud surrounding many MyTerm life insurance policy sales.  This fraud has affected trade and commerce.  The enterprise, and the pattern predicate acts of racketeering described herein, affected commerce and trade by defrauding Plaintiff and the Class through mail and wire fraud.

70.     Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiff(s).  Specifically:

a.  Prudential entered into a conspiracy with Wells Fargo to "sell" life insurance to Wells Fargo employees without the customer's informed consent and without normal best practices to confirm the customer's informed consent.

b.  Prudential received and accepted premium payments for life insurance policies without the customer's informed consent.

c.  Wells Fargo employees participating in the fraudulent scheme received a "kick back" from Prudential.

d.  When Prudential employees blew the whistle on the fraud being perpetrated in the "sale" of MyTerm policies to Wells Fargo customers Prudential refused to take action to identify, investigate, and remedy the fraud.

e. When Prudential employees blew the whistle on the fraud being perpetrated in the "sale" of MyTerm policies to Wells Fargo customers, Prudential fired the whistleblowers in an effort to silence them.

71.     Pursuant to and in furtherance of their fraudulent scheme, The Prudential Life Insurance Company of America, Pruco Life Insurance Company of New Jersey, Pruco Life Insurance Company and Wells Fargo committed multiple related acts of mail fraud and/or wire fraud in violation of 18 U.S.C. §§ 1341 and/or 1343.

72.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5), in that they occurred over a substantial period of time and there is a substantial threat that the activities will continue in the future because Defendants and Wells Fargo continue to sell MyTerm life insurance policies, offer kick-backs and continuously defraud consumers. In fact, Defendants have tirelessly attempted to silence claims of corporate misconduct by engaging in retaliatory firings.

73.     As a direct and proximate result Defendants' and Wells Fargo's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and Class Members have been injured in multiple ways, including but not limited to:

a. identity fraud due to the unauthorized establishment of a MyTerm life insurance policy;

b. financial loss due to the recurring monthly charge imposed by Wells Fargo for payment of MyTerm life insurance policy;

c. damage to credit ratings and financial status resulting from claims for premiums.

74.     Had Defendants been forthcoming with customers and the public generally, Plaintiff and Class Members would not have suffered these harms.  Defendants' commission of

mail fraud and/or wire fraud were reasonably calculated to deceive persons of ordinary prudence and comprehension, and were committed with reckless indifference to the truth if not the outright intent to deceive.

75.     Defendants' acts of mail fraud and wire fraud were committed with the specific intent to defraud, thereby entitling Plaintiff to treble damages under 18 U.S.C. § 1964(c).

76.     Defendants' acts of mail fraud and wire fraud were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being to enrich Defendants and Wells Fargo.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM II
### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### N.J. STAT. ANN. § 56:8-1, *ET SEQ.*

77.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

78.     Plaintiff, proposed Class Members and the Prudential Defendants are "person[s]" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

79.     Prudential and the Pruco entities are engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c) and (d).

80.     The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment,

suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2. The Defendants engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

81.      In the course of their business, Defendants willfully failed to disclose and actively concealed the fraud scheme described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of MyTerm life insurance policies.  The Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the New Jersey CFA.

82.      Defendants knew or should have known that their conduct violated the New Jersey CFA.

83.      As alleged above, the Defendants conducted and engaged in practices that were either false or misleading.

84.      The Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning their internal investigations beginning in 2014.  Instead, Defendants deliberately withheld the information and failed to correct practices they knew were fraudulent and deceptive.

85.     Defendants each owed a duty to Plaintiff and Class Members to disclose, correct and reverse the fraud associated with MyTerm life insurance policies established without consumer consent and/or knowledge.

86.     The Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers.  Prudential, Pruco Life Insurance Company of New Jersey and Pruco Life Insurance Company intentionally and knowingly engaged in practices with the intent to mislead Plaintiff and Class Members.

87.     As a result of the concealment and failure to remedy the known fraud occurring relative to MyTerm life insurance policies, Defendants caused Plaintiff and Class Members to suffer ascertainable losses.  These losses are direct and proximate results of the Defendants' violations of the New Jersey CFA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages.

88.     Defendants' conduct explained herein is violative of the New Jersey CFA, and these violations present a continuing risk to them as well as to the general public.  The Defendants unlawful acts and practices complained of herein affect the public interest.

89.     Plaintiff and Class Members are entitled to recover legal and/or equitable relief including an order enjoining Defendants' unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

90.     Pursuant to N.J. STAT. ANN. § 56:8-20, the Plaintiff will mail a copy of the complaint to the New Jersey Attorney General within ten (10) days of filing it with the Court.

## PRAYER FOR RELIEF

91.     Plaintiff, on behalf of himself and all others similarly situated, request the Court to enter judgment against the Defendants as follows:

    a.  an order certifying the proposed Class designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

    b.  a declaration that the Defendants are financially responsible for notifying Class Members about the MyTerm conspiracy;

    c.  an order enjoining Defendants to desist from further deceptive practices;

    d.  an award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties, damages, including treble damages and interest, in an amount to be proven at trial;

    e.  an award to Plaintiff and Class Members for the return of all fraudulently/ unauthorized monthly premiums charges for MyTerm policies, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

    f.  a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with reimbursement, MyTerm policy cancellation, and any collection charges incurred by Plaintiff's and Class Members' can be made and paid, such that Defendants, not the Class Members absorb the fairly traceable losses and expenses;

g.  a declaration that the Defendants must disgorge, for the benefit of Plaintiff

and Class Members, all or part of the ill-gotten profits they received from

the sale of MyTerm life insurance policies, or make full restitution to

Plaintiff and Class Members;

h.  an award of attorneys' fees and costs, as allowed by law;

i.  an award of prejudgment and post judgment interest, as provided bylaw;

j.  leave to amend this Complaint to conform to the evidence produced at trial;

and

a.  such other relief as may be appropriate under the circumstances.

**Weitz & Luxenberg, P.C.**
**Niedweske Barber Hager, LLC**
**Smith Mullin, P.C.**
Attorneys for Plaintiff, Alex Perea

By: /s/ Ellen Relkin

Dated: December 12, 2016

## <u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues and defenses.

**Weitz & Luxenberg, P.C.**
**Smith Mullin, P.C.**
**Niedweske Barber Hager, LLC**
Attorneys for Plaintiff, Alex Perea


By: /s/ Ellen Relkin


Dated: December 12, 2016

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**Weitz & Luxenberg, P.C.**
**Smith Mullin, P.C.**
**Niedweske Barber Hager, LLC**
Attorneys for Plaintiff, Alex Perea


By: /s/ Ellen Relkin


Dated: December 12, 2016